903 So.2d 888 (2005)
Ronnie JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
Ronnie Johnson, Petitioner,
v.
State of Florida, Respondent.
Nos. SC03-362, SC03-1752.
Supreme Court of Florida.
March 31, 2005.
Rehearing Denied May 26, 2005.
*891 Charles G. White, Miami, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Sandra S. Jaggard, Assistant Attorney General, Miami, FL, for Appellee/Respondent.
PER CURIAM.
Ronnie Johnson appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions the Court for a writ of habeas corpus.[1] We affirm the circuit court's order denying Johnson's rule 3.850 motion, and we deny Johnson's petition for a writ of habeas corpus.

FACTUAL AND PROCEDURAL BACKGROUND
Johnson was convicted of the March 20, 1989, first-degree murder of Lee Arthur Lawrence. The jury recommended the death penalty by a vote of seven to five. The trial court followed the jury's recommendation and sentenced Johnson to death. His conviction and sentence were affirmed by this Court on direct appeal. The relevant facts in this case are contained in this Court's opinion on direct appeal. See Johnson v. State, 696 So.2d 317, 319-20 (Fla.1997) (Johnson I.)
In a separate trial conducted prior to the Lawrence trial, Johnson was convicted *892 of the March 11, 1989, first-degree murder of Tequila Larkins. See Johnson v. State, 696 So.2d 326 (Fla.1997) (Johnson II). The jury recommended the death penalty by a vote of nine to three, and Johnson was sentenced to death by the trial court. Johnson's conviction and sentence were affirmed by this Court on direct appeal.
Johnson filed a motion for postconviction relief regarding the Lawrence case on March 1, 2001, an amended motion on March 20, 2001, and a second amended motion on January 18, 2002. In the second amended motion Johnson asserted eight ineffective assistance of counsel claims and eight other claims.[2] After a Huff[3] hearing the circuit court ordered an evidentiary hearing on only one claim: whether counsel was ineffective for failing to investigate Johnson's mental health. This issue was common to Johnson's 3.850 motion in the Lawrence and Larkins murder cases. The court held a single evidentiary hearing for both cases on October 4, 2002. Johnson presented the testimony of Dr. Merry Haber, a clinical and forensic psychologist, his mother, and himself. The State presented the testimony of Raymond Badini, Johnson's trial counsel in both of his murder cases.[4]

*893 The Lower Court's Order

Written closing arguments were submitted after the evidentiary hearing. On January 17, 2003, the lower court issued its order denying Johnson's motion for postconviction relief. The court found that all of the claims it had summarily denied were facially insufficient, refuted by the record, or procedurally barred.[5] As for the claim of ineffective assistance of counsel at the penalty phase, the court found that Johnson was evaluated at the time of trial for mental mitigation and that Johnson failed to prove that he was prejudiced by the failure to present at the penalty phase the results of a psychological evaluation. Johnson now appeals the circuit court's denial of relief. He also petitions this Court for a writ of habeas corpus.

I. INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO INVESTIGATE AND PRESENT MITIGATION EVIDENCE
Johnson argues that counsel was ineffective for failing to investigate and present mitigation evidence. Specifically, Johnson argues that counsel (1) failed to conduct a reasonable investigation into mitigating evidence by failing to obtain a psychiatric evaluation of Johnson; and (2) failed to present mitigating evidence during the penalty phase. In a lengthy analysis of Johnson's claim, the circuit court found that (1) Badini did have an evaluation performed *894 by a competent doctor and cannot be deemed ineffective for failing to have Johnson evaluated; (2) Badini was not ineffective for failing to discover Johnson's sexual orientation, especially since there is no correlation between homosexuality and committing murder; (3) Badini presented mitigation evidence; and (4) Johnson failed to show that the presentation of further evidence would have resulted in a life sentence.

A. Applicable Law
As we most recently stated in State v. Duncan, 894 So.2d 817 (Fla.2004):
Following the United States Supreme Court's decision in Strickland [v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)], this Court held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:
A claim of ineffective assistance of counsel, to be considered meritorious, must include two general components. First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the proceeding that confidence in the outcome is undermined.

Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986). Ineffective assistance of counsel claims present a mixed question of law and fact and, therefore, are subject to plenary review based upon the Strickland test. See id.; see also Stephens v. State, 748 So.2d 1028, 1033 (Fla.1999). Under this standard, this Court conducts an independent review of the trial court's legal conclusions, while giving deference to the trial court's factual findings. See id.

There is a strong presumption that trial counsel's performance was effective. Strickland provides: "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," 466 U.S. at 689, 104 S.Ct. 2052, and further: "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690, 104 S.Ct. 2052. The defendant alone carries the burden to overcome the presumption of effective assistance: "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, 104 S.Ct. 2052. The United States Supreme Court explained:
[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 690, 104 S.Ct. 2052; see also Asay v. State, 769 So.2d 974, 984 (Fla.2000) ("[T]he defendant bears the burden of proving that counsel's representation was unreasonable under prevailing professional standards and was not a matter of sound trial strategy."). Finally, "[j]udicial scrutiny of counsel's performance *895 must be highly deferential." 466 U.S. at 689, 104 S.Ct. 2052.
Duncan, 894 So.2d at 823.
As previously stated, a single evidentiary hearing was held on this identical issue for both of the murder cases involving Johnson. We have analyzed Johnson's claim of ineffective assistance of counsel for failure to investigate and present mitigation evidence in Johnson v. State, Nos. SC03-382 & SC03-1680, ___ So.2d ___, 2005 WL 729169 (Fla. Mar. 31, 2005). We adopt by reference the reasoning and analysis therein and, accordingly, find no error in the trial court's denial of relief on this issue.

II. IMPROPER SUBSTITUTION OF COUNSEL
Johnson argues that the circuit court erred in summarily denying Johnson's claim that court-appointed counsel improperly delegated[6] his case to an unqualified attorney. The circuit court appointed Arthur Huttoe to represent Johnson in both murder cases. Over the course of the proceedings in both cases, Johnson was represented by Badini and Carr.[7] Johnson argues that he did not consent to representation by Badini and Carr, and he contends that absent his consent to Badini and Carr's representation, his rights were violated. We have analyzed Johnson's identical claim in Johnson v. State, No. SC03-382 & SC03-1680, ___ So.2d ___, 2005 WL 729169 (Fla. Mar. 31, 2005). We adopt by reference the reasoning and analysis therein and, accordingly, find no error in the trial court's summary denial of this claim.

III. INEFFECTIVE ASSISTANCE OF COUNSEL DURING VOIR DIRE
Johnson alleges that the lower court erred in summarily denying his claim that counsel was ineffective during voir dire for failing to properly question the panel on death qualification. He argues that counsel failed to question the panel as to the effect mitigating circumstances might have on their willingness to apply the death penalty. He further argues that his counsel's failure to have conducted any meaningful voir dire on death qualification constituted a waiver of Johnson's right to due process and constituted a fundamental miscarriage of justice.
We begin by noting the importance of adequate voir dire on death qualification. Voir dire is an essential part of any first-degree murder trial in which the death penalty is sought. With that said, it is apparent from the record in this case that both the court and the State questioned the venire members in detail about their views both for and against the death penalty. The State and the court explained both aggravating and mitigating factors and the weighing process during the jury selection process.
Both the trial court and the State questioned the prospective jurors about their views on the death penalty. The State repeatedly stated during voir dire that if the mitigating factors outweighed the aggravating factors a sentence of life had to be imposed. Additionally, the State repeatedly asked the jurors whether they could recommend life imprisonment if they were reasonably convinced that the mitigating *896 factors outweighed the aggravating factors. The circuit court noted in its order denying postconviction relief that Johnson failed to state what additional questions counsel should have asked during voir dire.
In Teffeteller v. Dugger, 734 So.2d 1009 (Fla.1999), the defendant alleged that counsel did not adequately question the prospective jurors about their pretrial knowledge of the case. In denying Teffeteller's claim, the Court noted that the voir dire record indicated that the judge questioned the prospective jurors about pretrial publicity and their knowledge of the case. Those who expressed even the slightest knowledge of the case were further questioned to determine whether they could disregard this information and render an impartial verdict based solely on the evidence at the resentencing proceeding. The prosecutor also questioned the prospective jurors about their exposure to news reporting. The Court held:
In light of this questioning of the prospective jurors, we cannot fault trial counsel for failing to repeat the questioning. Thus, Teffeteller has failed to prove deficient performance in this regard. Moreover, in light of the procedure followed by the court, even if counsel was remiss in not asking additional questions during voir dire, it resulted in no prejudice to Teffeteller and no relief is warranted on this basis.
Id. at 1020-21. The same is true in this case. The trial court and State thoroughly questioned the prospective jurors about their views of the death penalty.
Johnson seems to argue that Badini could have asked different questions and have used his peremptory challenges[8] in a different manner to obtain a more defense-friendly jury. Such speculation fails to rise to the level of ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Reaves v. State, 826 So.2d 932, 939 (Fla.2002) (holding that an allegation that there would have been a basis for a for-cause challenge if counsel had "followed up" during voir dire with more specific questions was mere conjecture). Essentially, as in Teffeteller, even if we were to assume counsel's performance was deficient, given the thorough questioning by the State and the court, Johnson has failed to show any prejudice. Therefore, the trial court did not err in summarily denying the claim.

IV. FAILURE TO REQUEST INDIVIDUAL VOIR DIRE ON PRETRIAL PUBLICITY
Johnson argues that the trial court erred in summarily denying his claim that counsel was ineffective for failing to request individual voir dire on pretrial publicity and for failure to move to strike the panel when jurors made prejudicial remarks. He alleges that statements were made that demonstrated bias and prejudgment based upon media coverage which tainted the entire panel. Johnson argues that Badini's failure to request individual voir dire or to move to strike the entire panel was ineffective assistance and he was prejudiced.
The circuit court held that Johnson failed to demonstrate how the exposure to other venire members' opinions affected the outcome of the case. The court asked all the venire members if they had heard anything about the case in the media. Of the individuals who indicated that they heard about the case, three venire members expressed opinions concerning how they felt about what they heard. Those venire members who stated an opinion or who expressed a doubt about being fair-minded *897 were subsequently stricken for cause. The remaining venire members who stated, without more, that they had heard about the case in the media stated that they could be fair-minded.
The purpose of voir dire is to secure an impartial jury. Teffeteller v. Dugger, 734 So.2d 1009, 1028 (Fla.1999). "Additionally, the United States Supreme Court has held that individual voir dire to determine juror impartiality in the face of pretrial publicity is constitutionally compelled only if the trial court's failure to ask these questions renders the trial fundamentally unfair." Id. at 1028-29 (citing Mu'Min v. Virginia, 500 U.S. 415, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991)). The selection process that the Johnson I trial court used, asking the venire members about their knowledge of the case and their ability to set aside that knowledge, was sufficient to ensure that the trial was not fundamentally unfair. See State v. Knight, 866 So.2d 1195, 1210 (Fla.2003) (where voir dire method used did not expose venire to other venire members' knowledge of the case, refusal to conduct individual voir dire was not error). In order for the statement of one venire member to taint the panel, the venire member must mention facts that would not otherwise be presented to the jury. Pender v. State, 530 So.2d 391 (Fla. 1st DCA 1988); Wilding v. State, 427 So.2d 1069 (Fla. 2d DCA 1983). No venire member in Johnson's case mentioned a fact that would not otherwise be presented to the jury. A venire member's expression of an opinion before the entire panel is not normally considered sufficient to taint the remainder of the panel. Brower v. State, 727 So.2d 1026, 1027 (Fla. 4th DCA 1999).
Thus, the fact that the comments were made does not show that Johnson was prejudiced by the failure of counsel to request individual voir dire. Nor would a motion to strike the venire have been meritorious. The trial court did not err in summarily denying the claim.

V. INEFFECTIVE ASSISTANCE OF COUNSEL REGARDING THE MOTION TO SUPPRESS
Johnson argues that counsel was ineffective for failing to adequately investigate Johnson's alleged illegal arrest and for failing to cross-examine Detective Borrego to show how deception was used to obtain Johnson's confession. Specifically, Johnson alleges that if counsel had interviewed Terrace Isom, David Faison, and Anita Miller,[9] counsel would have determined that Johnson did not voluntarily accompany Officer Hull to the police station.
The trial court summarily denied the claim on the basis that Officer Hull had probable cause to arrest Johnson. Therefore, whether Johnson voluntarily went with Officer Hull was not an issue that would have affected the outcome of the trial. Detective Borrego testified at the suppression hearing that prior to the time Johnson was approached by Officer Hull, Eric Bettle[10] had made a positive identification of Johnson as the person who killed Larkins. Thus, at the time Johnson *898 accompanied Officer Hull to the police station, he had already been identified in a photo lineup and probable cause to arrest Johnson existed. See State v. Gavin, 594 So.2d 345 (Fla. 2d DCA 1992). The photo lineup was apparently conducted by Detective Borrego. Officer Hull picked up Johnson at the request of Detective Borrego. Under the fellow officer rule, probable cause is imputed to Officer Hull. See Routly v. State, 440 So.2d 1257, 1261 (Fla.1983). Even if Johnson did not voluntarily accompany the officers to the police station, the claim is without merit because probable cause to arrest Johnson existed.
Johnson also argues that counsel was ineffective for failing to cross-examine Detective Borrego to show how deception was used to obtain Johnson's confession. Johnson alleges that he was deceived when he was told during his questioning that Rodney Newsome[11] was in the police station providing information. Johnson alleges that Newsome did not make a statement until after Johnson himself made a statement. Even if Johnson's allegations are taken as true, this Court and the United States Supreme Court have held that police officers are permitted to deceive suspects regarding the evidence they have against them. See Frazier v. Cupp, 394 U.S. 731, 739, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (holding that falsely informing a defendant that a codefendant had confessed did not result in the defendant's confession being involuntary); Escobar v. State, 699 So.2d 988, 994 (Fla.1997); Grant v. State, 171 So.2d 361, 363 n. 1 (Fla.1965). This claim is legally insufficient and summary denial was proper.

VI. DENIAL OF THE MOTION TO SUPPRESS
Johnson alleges that the police coerced him into waiving his Miranda[12] rights by administering an oath. The circuit court held that Johnson's allegations were vague and insufficient to state a claim. In addition, the court noted that this claim is procedurally barred because it could have been raised on direct appeal. Francis v. Barton, 581 So.2d 583 (Fla.1991). We agree. Issues regarding whether a confession should have been suppressed as involuntary are issues that could have been raised on direct appeal. See Christopher v. State, 489 So.2d 22, 24 (Fla.1986). This claim is procedurally barred.

VII. FAILURE TO IMPEACH TREMAINE TIFT
Johnson alleges that counsel was ineffective for not cross-examining Tift as to why he was not prosecuted as an accessory after the fact to the murder of Lawrence. Johnson alleges that Tift rented a hotel room for Johnson and his codefendants to hide out in after the murder. He asserts that Tift should have been charged as an accessory after the fact for this reason. The State points out that the mere fact that Tift rented a hotel room for Johnson is not sufficient to have exposed Tift to liability as an accessory after the fact. Johnson's allegations were insufficient to show that Tift could have been impeached with the State's failure to prosecute him as an accessory after the fact. Furthermore, the record does not support the allegation that Tift was an accessory after the fact. Tift testified that he was not aware of the murder until two to three *899 weeks after the murder. Johnson's allegations are insufficient to show that Tift could have been impeached with the State's failure to prosecute him as an accessory after the fact.
Additionally, there is no reasonable probability that the result of the trial would have been different had counsel attempted to impeach Tift. The circuit court did not err in summarily denying this claim.

VIII. FAILURE TO OBJECT TO THE PENALTY PHASE JURY INSTRUCTIONS
Johnson argues that counsel was ineffective for failing to object to the CCP jury instruction which was found by this Court to be unconstitutionally vague in Jackson v. State, 648 So.2d 85 (Fla.1994). This claim was specifically addressed in Walton v. State, 847 So.2d 438, 445 (Fla.2003). In disposing of Walton's claim that his counsel was ineffective for failing to anticipate Jackson and the underlying United States Supreme Court decision in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992), the Court stated:
Because the Espinosa decision was delivered by the United States Supreme Court in 1992, and refinement of Florida's jury instructions by this Court began thereafter, trial and appellate counsel cannot be faulted for failing to assert claims that did not exist at the time they represented Walton. This Court has consistently held that trial and appellate counsel cannot be held ineffective for failing to anticipate changes in the law. See, e.g., Nelms v. State, 596 So.2d 441, 442 (Fla.1992); Stevens v. State, 552 So.2d 1082, 1085 (Fla.1989).
Walton, 847 So.2d at 445. This Court has never held the giving of the standard CCP jury instruction to be fundamental error. See Jackson, 648 So.2d at 90 (holding that claims that the instruction on the CCP aggravator is unconstitutionally vague are procedurally barred unless a specific objection is made at trial and pursued on appeal.) The circuit court did not err in summarily denying the claim.

IX. BRADY[13] CLAIM
Johnson argues that the State suppressed the identities of witnesses, Anita Miller, Terrace Isom, and David Faison, who could have testified to the circumstances under which defendant was taken into custody. The facts underlying this claim are common to the identical claim in Johnson II. We have analyzed Johnson's Brady claim in Johnson v. State, Nos. SC03-382 & SC03-1680, ___ So.2d ___, 2005 WL 729169 (Fla. Mar. 31, 2005). We adopt by reference the reasoning and analysis therein and, accordingly, find no error in the trial court's summary denial of this claim.

X. PENALTY PHASE JURY INSTRUCTIONS
Johnson argues that the penalty phase jury instructions given in his case violated the requirements of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), and counsel was ineffective for failing to object to the instructions. Because no objection was raised at trial, the claim is procedurally barred. Griffin v. State, 866 So.2d 1, 18 (Fla.2003). Even if it was not procedurally barred, the claim is without merit and Johnson is not entitled to relief. Counsel cannot be deemed ineffective for failing to raise a nonmeritorious issue. Kokal v. Dugger, 718 So.2d 138, 143 (Fla.1998). The circuit court did not err in summarily denying this claim.

*900 XI. PROPORTIONALITY OF DEFENDANT'S DEATH SENTENCE
Johnson argues that his death sentence is disproportionate in comparison to the life sentence received by codefendant Ingraham, who was also a triggerman and first shot and hit Lawrence. This issue was raised and rejected by this Court on direct appeal. Johnson I, 696 So.2d at 325-26. Issues raised and rejected on direct appeal are not cognizable through collateral attack. Windom v. State, 886 So.2d 915, 930 (Fla.2004). The trial court did not err in holding this issue to be procedurally barred.

XII. THE NONSTATUTORY MITIGATING CIRCUMSTANCE JURY INSTRUCTION
Johnson argues that the nonstatutory mitigating circumstance jury instruction in his case was erroneous and that Badini's failure to object to the instruction constituted ineffective assistance of counsel.
Counsel did not object to the nonstatutory mitigation jury instruction at trial. Therefore, Johnson's challenge as to the jury instruction is procedurally barred. Turning to the ineffective assistance of counsel claim, this Court has repeatedly affirmed the giving of the same catch-all nonstatutory mitigation jury instruction that was given in Johnson's case. Belcher v. State, 851 So.2d 678, 684-85 (Fla.2003), cert. denied, 540 U.S. 1054, 124 S.Ct. 816, 157 L.Ed.2d 706 (2003); Downs v. Moore, 801 So.2d 906, 913 (Fla.2001) (holding that the "catch-all" standard jury instruction on nonstatutory mitigation when coupled with counsel's right to argue mitigation is sufficient to advise the jury on nonstatutory mitigating circumstances). Counsel cannot be deemed ineffective for failing to raise a nonmeritorious issue. Kokal, 718 So.2d at 143. The circuit court did not err in summarily denying this claim.

XIII. THE CONSTITUTIONALITY OF FLORIDA'S DEATH PENALTY
Johnson argues that Florida's death penalty scheme violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court has repeatedly rejected similar claims. See Bottoson v. Moore, 833 So.2d 693 (Fla.2002); King v. Moore, 831 So.2d 143 (Fla.2002). Furthermore, one of the aggravating circumstances found by the trial court in this case was Johnson's prior conviction of a violent felony,[14] "a factor which under Apprendi[15] and Ring need not be found by the jury." Jones v. State, 855 So.2d 611, 619 (Fla.2003); see also Doorbal v. State, 837 So.2d 940, 963 (Fla.) (rejecting Ring claim where one of the aggravating circumstances found by the trial judge was defendant's prior conviction for a violent felony), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003). Accordingly, the circuit court did not err in summarily denying this claim.

XIV. PETITION FOR HABEAS CORPUS
Johnson asserts a number of claims of ineffective assistance of appellate counsel in his petition for habeas corpus. In considering the petition for habeas relief on the basis of ineffective assistance of appellate counsel, we must determine:
[W]hether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, *901 second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000); Thompson v. State, 759 So.2d 650, 660 (Fla.2000). Moreover, "[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based." Freeman, 761 So.2d at 1069; see also Knight v. State, 394 So.2d 997, 1001 (Fla.1981).
Johnson alleges the following five claims of ineffective assistance of appellate counsel: (1) failure to allege error concerning substitution of counsel; (2) failure to allege error concerning the denial of the motion to suppress; (3) failure to claim that the CCP jury instructions were erroneous; (4) failure to claim error under Caldwell; and (5) failure to argue that the nonstatutory mitigation instruction was erroneous. Johnson makes the identical claims in Johnson II. We have analyzed these five claims of ineffective assistance of appellate counsel in Johnson v. State, Nos. SC03-382 & SC03-1680, ___ So.2d ___, 2005 WL 729169 (Fla. Mar. 31, 2005). We adopt by reference the reasoning and analysis therein and, accordingly, deny these claims.

CONCLUSION
For the reasons stated above, we affirm the lower court's denial of Johnson's rule 3.850 motion and deny Johnson's petition for a writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., specially concurs with an opinion.
LEWIS, J., concurs in result only.
ANSTEAD, J., specially concurring.
While I continue to disagree with this Court's analysis of the Supreme Court's opinion in Ring v. Arizona, I recognize that a majority of the Court has rejected the application of Ring to collateral claims.
NOTES
[1] We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.
[2] Johnson asserted the following claims: (1) his counsel was ineffective in violation of the Sixth Amendment and deprivation of his right to due process and equal protection under the Fifth and Fourteenth Amendments for the following eight claims: (A) his Sixth Amendment right to counsel, right to due process and equal protection were violated when his court-appointed counsel improperly delegated representation to an unqualified attorney; (B) for effectively waiving voir dire on death qualification; (C) for failure to have requested individual voir dire on pretrial publicity or failing to move to strike the panel when jurors made prejudicial remarks; (D) for ineffectiveness during penalty phase and sentencing; (E) for conducting an inadequate investigation into the facts and circumstances surrounding his detention by police that led to his taped confession; (F) when no effort was made to impeach the credibility of Tremaine Tift; (G) for failing to object to the aggravating factor of cold, calculated, and premeditated (CCP) on the grounds of unconstitutional vagueness, and that Johnson was denied due process and equal protection when the jury was given insufficient guidance to determine whether to apply the aggravator; (H) because Johnson was deprived of his personal right to testify; (2) Johnson's confession was obtained in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (3) the State suppressed immunity granted to Tremaine Tift for being an accessory after the fact in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution; (4) that the State suppressed the identities of witnesses who could have testified to the circumstances under which Johnson was taken into custody; (5) Johnson is being denied his rights to due process and equal protection because access to the files and records pertaining to his case in the possession of certain state agencies has been withheld in violation of chapter 119, Florida Statutes, and he cannot prepare an adequate motion to vacate, set aside, or correct illegal sentence until he has received those materials and been afforded due time to review them; (6) that the sentencing jury was misled by comments, questions, and instructions that unconstitutionally and inaccurately diluted the jury's sense of responsibility towards sentencing in violation of the Eighth and Fourteenth Amendments to the United States Constitution and trial counsel was ineffective for not properly objecting; (7) that the death sentence in this case was unconstitutional in violation of the Eighth and Fourteenth Amendments to the United States Constitution as a matter of law in light of the fact that Johnson was not the triggerman and the triggerman received a reduced sentence; (8) Johnson was prejudiced by the court's instructions concerning nonstatutory aggravating circumstances; and (9) that Florida's death penalty procedure violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[3] Huff v. State, 622 So.2d 982 (Fla.1993).
[4] For a description of the testimony at the evidentiary hearing, see Johnson v. State, Nos. SC03-382 & SC03-1680, ___ So.2d ___, 2005 WL 729169 (Fla. Mar. 31, 2005).
[5] Because the circumstances of Johnson's detention, questioning, and confession are common to the Lawrence and Larkins murders, some of the proceedings in Johnson I and Johnson II were combined. A single hearing was held to determine the admissibility of the defendant's confession in Johnson I and in Johnson II. On direct appeal of the Lawrence murder conviction, this Court adopted by reference the reasoning and analysis in the case involving the murder of Ms. Larkins related to the trial court's refusal to suppress Johnson's confession. Furthermore, one Huff hearing was conducted related to the rule 3.850 motions for both cases. The trial court's order following the Huff hearing granted a combined evidentiary hearing for both cases on the single issue that counsel was ineffective for failing to present statutory mental health mitigating evidence during the penalty phase and summarily denied all of Johnson's other claims. The court's orders denying postconviction relief in both murders were filed on the same day. In Johnson I, the trial court seems to have made a clerical error by writing its order addressing Johnson's claims as raised in his amended 3.850 motion, rather than as raised in his second amended 3.850 motion. Consequently, the court did not provide reasons for denying the following five issues (as numbered in Johnson's brief on appeal to this Court) in its order: (i) issue 5, whether the circuit court erred in not granting an evidentiary hearing on the issue of trial counsel's constitutionally inadequate investigation into the facts and circumstances surrounding his detention by the police that led to his taped confession; (ii) issue 6, whether the lower court properly denied Johnson's motion to suppress; (iii) issue 7, whether the lower court erred in summarily denying the claim that counsel was ineffective for failing to impeach Tremaine Tift; (iv) issue 9, whether the lower court erred in summarily denying the claim that the State suppressed the identities of witnesses; and (v) issue 13, whether Florida's death penalty statute violates Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi.

These five issues were raised in the 3.850 motion for both cases. The trial court provided detailed reasons for denying these five identical claims in its order denying relief in the 3.850 motion in Johnson II. Johnson raised all five of these issues in his 3.850 appeal to this Court without arguing that he is entitled to relief for the trial court's clerical error. Based on the Huff hearing and the order prepared in Johnson II, it is clear that the trial court made findings of fact and determinations of law on these five issues and that Johnson was not prejudiced by the trial court's clerical error. In addressing these five issues, we accept the detailed reasoning of the trial court on the identical issues in Johnson II as the trial court's reasoning for the same issues in Johnson I.
[6] Effective May 24, 1997, section 925.036(3), Florida Statutes (2004), prohibits "[a]n attorney appointed in lieu of the public defender to represent an indigent defendant [from] reassign[ing] or subcontract[ing] the case to another attorney."
[7] No motion to substitute counsel or order granting such a motion is included in the record. It appears from the record that although Johnson was represented throughout his case by Badini and Carr, Huttoe remained counsel of record for the duration of the proceedings.
[8] Badini used eight of his peremptory challenges in this case.
[9] This witness is inconsistently referred to as Anita Brown and Anita Miller in the record. For purposes of this appeal, the witness will be referred to as Anita Miller.
[10] In Johnson I, Officer Hull seems to have mistakenly referred to Eric Bettle as the witness who identified Johnson as the person who killed Tequila Larkins, instead of Mr. Briggs. Both Bettle and Briggs were present at the laundromat where Tequila Larkins was murdered. The record in Johnson II (the Larkins murder) shows that Jeffrey Briggs identified Johnson in a photo lineup at 10:40 a.m. on April 1, 1989. Johnson accompanied Officer Hull to the police station sometime after 6 p.m. on April 1, 1989.
[11] Rodney Newsome, one of four suspects charged in the crime, was convicted of second-degree murder and sentenced to twenty-two years in prison.
[12] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[13] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[14] Johnson was convicted of the attempted first-degree murder of Marshall King on August 8, 1991.
[15] Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).