745 So.2d 1016 (1999)
Johnny E. GORDON, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 98-2522.
District Court of Appeal of Florida, Fourth District.
October 13, 1999.
Rehearing Denied December 10, 1999.
*1017 Richard L. Jorandby, Public Defender, and Louis G. Carres, Assistant Public Defender, West Palm Beach, for appellant/cross-appellee.
Robert A. Butterworth, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Assistant Attorney General, West Palm Beach, for appellee/cross-appellant.
GROSS, J.
Johnny Gordon appeals his conviction for burglary of an occupied dwelling. See § 810.02(3)(a), Fla. Stat. (1997). He argues that his conduct did not amount to burglary, because the victim invited him into her home. We affirm the conviction, because Gordon induced the victim's invitation by fraud or trick. The state cross-appeals Gordon's sentence, contending that the trial court was required to sentence Gordon as a prison releasee reoffender. We affirm the sentence, because the trial court sentenced Gordon as an habitual felony offender to a 20 year term on a second degree felony, so that the mandatory minimum sentence sought by the state did not apply.
Gordon first argues that the trial court erred in denying his motion for judgment of acquittal, since the victim consented to his entry into her mobile home and never requested that he leave the premises. The elderly victim, Mary Stewart, testified that she arrived home from church around noon on a Sunday and cooked some fried chicken. As she was getting ready to eat, she heard a knock at the front door. A tall man, later identified as Gordon, was at the door with a piece of green material *1018 over his mouth. Gordon said he had a toothache. The victim told him to come in and she would get him some aspirin. She unlocked the door and let him in. Once inside, Gordon said that he would like to buy a mobile home in the area. The victim said she would call the park owners.
Before she could make the call, Gordon pulled the telephone out of the wall, ripping the wires. In doing this, he also pulled the victim's "life line" out of the wall. The "life line" connected the victim directly with a hospital. Gordon told the victim he wanted her money. After learning that the victim had only $4.00 in her purse, Gordon asked for her watch. She held out her arm and said, "Here. Take it." Gordon took the watch off her arm and went out the back door. The victim immediately went out the front door to her neighbors' house and asked them to call 911.
The police caught Gordon and the victim identified him. On his way to the police cruiser, he dropped the victim's watch to the ground. When asked by the booking officer at the jail if he had a "painful dental problem," Gordon responded, "No."
Section 810.02(1), Florida Statutes (1997), defines burglary:
"Burglary" means entering or remaining in a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter or remain.

(Emphasis supplied).
The supreme court has construed this statute in a way that makes consent an affirmative defense to burglary. See State v. Hicks, 421 So.2d 510, 511 (Fla.1982). "Thus, the burden is on the defendant to establish [that] there was consent." Miller v. State, 733 So.2d 955, 957 (Fla.1998).
This case is controlled by Howard v. State, 400 So.2d 1329 (Fla. 4th DCA 1981). The sole issue in Howard was whether a burglary conviction had to be reversed because the defendant had "obtained consent to enter the victim's home by telling her that his van had broken down and asking to use her telephone." Id. at 1329. This court noted that entering a structure with consent is a defense to burglary. We stated that "it is clear that entrance gained by trick or fraud will support a conviction for burglary." Id. (citing Pedone v. State, 341 So.2d 532 (Fla. 3d DCA 1977); 13 Am.Jur.2d Burglary § 13). The rationale for this law is that consent to enter obtained by trick or fraud "is actually no consent at all and, therefore, the entrance is unauthorized." Id. (citing State v. Ortiz, 92 N.M. 166, 584 P.2d 1306, 1308 (Ct.App.1978)).
In this case, as in Howard, Gordon used "trick or fraud," the feigned toothache, to gain entry into the victim's home. This is sufficient to show an unlawful entry within the meaning of section 810.02(1).
We distinguish this case from Miller v. State, 733 So.2d 955 (Fla.1998),[1] cited by Gordon. Miller involved a shooting in a grocery store. After finding competent and substantial evidence to support certain convictions, the supreme court reversed Miller's conviction for burglary. The basis for the reversal was that the grocery store which the defendant entered to commit a robbery was open to the public at the time he entered it. The supreme court held that where "a defendant can establish that the premises were open to the public, then this is a complete defense" to a burglary charge. 733 So.2d at 957 (citations omitted). The supreme court also limited its holding in the case to the "open to the public" affirmative defense to burglary; the court noted that it did "not address either the licensee or invitee affirmative defenses." Id. at n. 1. This case involves *1019 the invitee affirmative defense, so Howard is unaffected by the decision in Miller.
Gordon also challenges the special jury instruction the court read after the standard instruction on burglary. The court charged the jury:
If you find beyond a reasonable doubt that permission or consent to enter the structure was obtained by means of fraud, deceit, or pretense, then entry into the structure constitutes entry without permission or consent. You must determine from the evidence and testimony presented at trial and from it alone whether or not the State has proven beyond a reasonable doubt that the defendant obtained such permission or consent through fraud, deceit, or pretense.
While the standard jury instructions are intended to assist the trial court in its responsibility to charge the jury on the applicable law, the instructions are intended only as a guide, and do not relieve the trial court of its responsibility to charge the jury correctly in each case. See Fla. Std. Jury Instr. (Crim.) [p. x].[2] The state's case demonstrated that the victim had invited Gordon into her home. In order to obtain a conviction, the state had to establish that the invitation was precipitated by trick or fraud under Howard. The special jury instruction correctly set forth the law stated in Howard.
During sentencing, the state sought to have Gordon sentenced as both a prison releasee reoffender pursuant to section 775.082(8), Florida Statutes (1997), and an habitual felony offender under section 775.084, Florida Statutes (1997). The state argued that the 15 year mandatory minimum of section 775.082(8)(a)2.c. & (b) would apply even if Gordon were sentenced under section 775.084. The court sentenced Gordon as an habitual felony offender to 20 years in the department of corrections, with credit for time served. The court declined to sentence Gordon, in addition, as a prison releasee reoffender. The state has cross-appealed this sentencing issue, arguing that the trial court did not have the discretion not to impose a prison releasee reoffender sentence, since Gordon qualified for the sentence under section 775.082(8)(a)1 and the state sought the sentence pursuant to section 775.082(8)(a)2.
The state's argument implicates two subsections of the prison releasee reoffender act.
Section 775.082(8)(c) provides:
Nothing in this subsection shall prevent a court from imposing a greater sentence of incarceration as authorized by law, pursuant to s. 775.084 [pertaining to violent career criminals, habitual felony offenders, and habitual violent felony offenders] or any other provision of law.
Section 775.082(8)(b) states:

A person sentenced under paragraph (a) shall be released only by expiration of sentence and shall not be eligible for parole, control release, or any form of early release. Any person sentenced under paragraph (a) must serve 100 percent of the court-imposed sentence.
(Emphasis supplied).
The provisions of a criminal sentencing statute, such as section 775.082(8), "must be strictly construed according to their letter." Perkins v. State, 576 So.2d *1020 1310, 1312 (Fla.1991) (citations omitted); McFadden v. State, 732 So.2d 335, 337 (Fla. 1st DCA 1998), approved, McFadden v. State, 737 So.2d 1073 (Fla.1999); Williams v. State, 680 So.2d 532, 533-34 (Fla. 1st DCA 1996); § 775.021(1), Fla. Stat. (1997). "[W]hen a statute is susceptible to more than one meaning, the statute must be construed in favor of the accused." Cabal v. State, 678 So.2d 315, 318 (Fla. 1996); Register v. State, 715 So.2d 274, 278 (Fla. 1st DCA 1998). The law thus requires a legislature to be precise in drafting a criminal law. A court may not guess at legislative intent or employ common law rules of construction to stretch a criminal statute to a meaning beyond its plain language. See Perkins, 576 So.2d at 1314 (observing that the "state's reliance on common law rules of construction such as ejusdem generis must yield to the rule of strict construction").
Applying these principles, the mandatory minimum sentence provision of section 775.082(8)(b) applies to persons "sentenced under paragraph (a)" of the act. Had Gordon been sentenced under paragraph (a), he would have to have received the 15 year sentence specified for a second degree felony in section 775.082(8)(a)2.c. Instead, the trial court sentenced Gordon "under" paragraph (c) of the act as an habitual felony offender to a 20 year sentence authorized by section 775.084(4)(a)2. The paragraph (b) mandatory minimum must be read to apply to the sentences specified in paragraph (a). Since Gordon received a sentence greater than the 15 year sentence provided in paragraph (a), he was sentenced according to the provisions of paragraph (c), and the mandatory minimum sentence of paragraph (b) does not apply. Thus, where the state seeks and obtains an habitual offender sentence greater than that which would otherwise be provided for in section 775.082(8)(a)2 .a.-d., the mandatory minimum sentence of section 775.082(8)(b) does not apply.
For these reasons, we affirm the judgment and sentence of the trial court.
STONE and POLEN, JJ., concur.
NOTES
[1] Gordon's brief cites Miller v. State, 713 So.2d 1008 (Fla.1998). The court issued a revised opinion, Miller v. State, 733 So.2d 955 (Fla.1998). This opinion's reference to Miller is to the revised opinion.
[2] The preface to the standard jury instructions states:

The Court hereby authorizes the publication and use of the revised instructions in criminal cases and the instructions in misdemeanor cases, but without prejudice to the rights of any litigant objecting to the use of one or more of such approved forms of instructions. The Court recognizes that the initial determination of the applicable substantive law in each individual case should be made by the trial judge. Similarly, the Court recognizes that no approval of these instructions by the Court could relieve the trial judge of his responsibility under the law to charge the jury properly and correctly in each case as it comes before him. This order is not to be construed as any intrusion on that responsibility of the trial judges.
Fla. Std. Jury Instr. (Crim.) [p. x].