437 So.2d 1091 (1983)
Robert C. RICHARDSON, Appellant,
v.
STATE of Florida, Appellee.
No. 61924.
Supreme Court of Florida.
September 1, 1983.
*1092 Steven L. Bolotin, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Richard A. Patterson, Asst. Atty. Gen., Tallahassee, for appellee.
SHAW, Justice.
This is a direct appeal from a judgment adjudging defendant guilty of first-degree murder and a sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm the conviction but vacate the death sentence and remand for resentencing.
Appellant Robert C. Richardson was charged by indictment with first-degree murder and burglary. A trial was held on August 18-21, 1981, before Circuit Judge Charles E. Miner. The jury was unable to reach a verdict and a mistrial was declared. On October 13, 1981, a second trial was commenced before Judge George L. Harper, and the jury returned verdicts of guilty on both counts. Subsequent to the guilty verdicts, it was discovered and disclosed to the judge that one juror was a distant relative of appellant's ex-wife and that two of the jurors had gone to the scene where the crimes occurred following the conclusion of the guilt trial. A new jury was impaneled, without objection, to hear the penalty phase of the trial. After hearing testimony and argument, the jury returned a recommendation that appellant be sentenced to life imprisonment, without the possibility of parole for twenty-five years. The trial judge adjudicated the appellant guilty of first-degree murder and burglary, overrode the jury's recommendation of life imprisonment, and sentenced the appellant to death for murder with a consecutive life sentence for the burglary.
The following facts bear on the issues before us. Willie Gary, Jr., testified that he had known appellant for a number of years. Gary testified that he was helping Shack Gardner at the latter's garage on the morning of the murder when he saw appellant talking with the murder victim in the victim's yard. Gardner's garage is across the street, approximately forty yards, from the murder scene. Four other witnesses testified they were at a home adjacent to the murder homesite and saw and talked with appellant there on the morning of the murder. They also corroborated Gary's testimony that appellant and the victim were talking together the morning of the murder and that appellant was wearing a work uniform comprised of dark blue pants and a light blue shirt.
*1093 Later in the morning Gary heard loud noises coming from the victim's home, which he mentioned to Gardner. Gardner attributed the noise to someone moving furniture and left the garage on an errand. Gary testified he heard more loud "bamming" noises coming from the house and saw appellant leave the house, carrying a yellow blanket covered with blood. Gary testified that appellant returned to the house after five to ten minutes and reentered, carrying what appeared to be two wooden objects, that there were more loud "bamming" noises, and that appellant left the scene covered with blood.
There was testimony from crime scene investigators that there was evidence of a forced entry into the house and a great deal of blood splattered on the walls and floor. The medical examiner testified that the victim died from massive head injuries with multiple fractures caused by a large instrument wielded with great force. Also present were wounds probably caused by a cutting instrument of some kind. The victim's grandson, who lived in the house, testified that various items of value were missing from the house and that the house had been in order when he left that morning. A fence-post type of object was found in the house; the medical examiner testified that an object of that type could have been used to cause some of the injuries and the grandson testified that object was not in the home when he left that morning.
Appellant first urges that his conviction should be reversed because of the admission of irrelevant and highly prejudicial testimony by one of the four witnesses who testified to appellant's presence adjacent to and on the murder scene during the morning of the murder. The testimony from Mamie Franklin, an elderly woman, was as follows:
Q All right. Now, what happened when he came up to Ruby's house? What was that about?
A Yes. He sat on the steps and Ruby and I were planting some flowers, putting them in the pot. And I had a flower in the pot and I was standing up and he was sitting on the steps. And he asked me could he carry my flower home. And I told him no, I didn't want him to carry my flower home, I could take it.
So, he said again, "Aw, Ms. Mamie, let me carry your flower home."
I say, "Stop being hard-headed. I can carry my flower home." I said, "When anybody tell you no, they mean no." That's the way I spoke it to him.
So, after then, he jumped up on the steps and he turned towards me and he shook his private at me. So, I told Ruby then, I said, "Ruby, I'm going home." I don't know what happened here, because this is the first time he ever did anything like that, got out of his place with me. All he did was spoke to me and went on.
Q Now, my question to you then was that behavior  was Robert Clarence Richardson acting different that morning than he has acted when you have seen him in the past?
MS. COCHEU: Objection, Your Honor. May we approach the bench?
(Whereupon, the following bench conference was had with the court reporter present.)
MS. COCHEU: Your Honor, I think Mr. Meggs is going to try and get Ms. Franklin to say something that is very irrelevant and inflammatory concerning something Mr. Richardson might have said and done. And I don't think it's appropriate. And I think it's only intended to inflame the jury. And I would object to this being said in front of the jury.
MR. MEGGS: Judge, I'm just asking was he acting any different before.
THE COURT: Well, that question can be allowed. I don't know what you're talking about.
MR. RICHMOND: Acting any different is too general.
MR. MEGGS: I can't hear you, Hal, I'm sorry.
MR. RICHMOND: Just asking a question, was he acting any different, his common bad character or otherwise, it's an improper comment at this time. His character has not been proven an *1094 issue before this jury. Now, we can go ahead and let it 
MR. MEGGS: I'm not asking how he  I was just asking was he different that morning.
MR. RICHMOND: He has already asked and gotten in through the witness the fact that he shook his private at her, which I move to strike that as being highly prejudicial and having nothing to do  it's not within the res gestae of this crime and it's just done to show prejudice against this Defendant.
THE COURT: I will let you ask this one question you asked, but don't get into anything of a nature that would be prejudicial and bring out matters of his character, because they're not in issue at the time.
MR. MEGGS: Yes, sir. I need to instruct the witness that the question that I asked, was he acting any different than she knew him in the past. And I think her answer to that question would be yes and that would be all I would ask her.
THE COURT: Okay.
MR. RICHMOND: I object to that question as to form.
THE COURT: Objection overruled.
(Whereupon, the following proceedings were had in the presence of the jury.)
BY MR. MEGGS:
Q Ms. Franklin, I will repeat my question to you. Was Robert Clarence Richardson acting any different on that morning of March 9th when you saw him than he normally did?
A Yes, he was.
MR. MEGGS: No further questions.
Appellant claims that the trial court committed reversible error in permitting the testimony that appellant shook his "private" at Franklin since this tended to show bad character and was irrelevant. We agree that appellant's character was not at issue but note the absence of a timely objection. The only objection registered was a move to strike the testimony after the three attorneys went to sidebar on a later separate objection. We note also that appellant did not pursue his motion to strike even though the judge did not rule on the motion. Under these circumstances, appellant has not preserved the issue for appeal. Steinhorst v. State, 412 So.2d 332 (Fla. 1982); Castor v. State, 365 So.2d 701 (Fla. 1978). In any event, we are not persuaded that it was harmful error. The comment was part of a somewhat rambling answer which served to establish that the witness firmly recalled seeing appellant at the scene on the morning of the murder.
Appellant next urges that the trial judge erred in overriding the jury's recommendation of life imprisonment based on a finding of six aggravating and no mitigating circumstances. Although appellant has not challenged these findings on appeal, we review them nonetheless and comment in order to provide guidance on remand: two of the enumerated aggravating circumstances are that the murder was committed while engaged in the crime of burglary and that the murder was committed for financial gain. The facts supporting these two circumstances are the same and cannot be used to support two separate aggravating circumstances. Vaught v. State, 410 So.2d 147 (Fla. 1982); Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). We note also that the evidence does not support a finding that the murder was committed in a cold, calculated and premeditated manner. The facts and circumstances show that the victim discovered appellant, a person known to him, committing a burglary and that the murder was extemporaneously committed for the purpose of avoiding a lawful arrest. The evidence does not show beyond a reasonable doubt that there was any heightened degree of premeditation, calculation, or planning. Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982); Combs v. State, 403 So.2d 418 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2258, 72 L.Ed.2d 862 (1982).
*1095 Appellant's persuasive argument focuses on the judge's prefatory comments in overriding the jury recommendation of life imprisonment. In his order imposing the death sentence, the judge supported the jury override by stating that:
The Penalty Phase jury did not have the benefit of all of the evidence due to the unusual developments in the trial process. The convicting jury was disqualified due to unforeseen circumstances not attributed to the Defendant or the State. Due to these unusual circumstances this Court is of the view that the Penalty Phase jury's recommendation was not based on all available facts and evidence.
Even though we recognize the unusual procedural history of this case, we cannot countenance the denigration of the jury's role implicit in these comments. It is well-settled that a jury's advisory opinion is entitled to great weight, reflecting as it does the conscience of the community, and should not be overruled unless no reasonable basis exists for the opinion. McCampbell v. State, 421 So.2d 1072 (Fla. 1982); McCrae v. State, 395 So.2d 1145 (Fla. 1980); cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Tedder v. State, 322 So.2d 908 (Fla. 1975). Because of the unusual circumstances (the penalty phase jury had not heard the evidence of guilt), counsel for both parties argued, and the trial court ruled, that the jury should be given a full presentation of the evidence. So far as the record and the briefs show, neither party was constrained in its presentation. It is a defendant's right to have a jury advisory opinion, and absent a voluntary and intelligent waiver of that right, a judge may not frustrate this important jury function. Lamadline v. State, 303 So.2d 17 (Fla. 1974). We cannot condone a proceeding which, even subtly, detracts from comprehensive consideration of the aggravating and mitigating factors after all parties have agreed on the appropriate evidence to be considered.
Finally, appellant urges that the jury override provision of Florida's death penalty statute is unconstitutional. The Florida death penalty statute has been repeatedly upheld as constitutional, but this issue is obviated by our remand on other grounds.
We affirm the conviction but vacate the death sentence and remand for imposition of a life sentence.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., concurs with conviction, but dissents from the sentence.