I concur in the result reached, because I believe, after a review of the record in this case, and especially after a review of the evidence, that the appellant robbed the victim of forty cents and forced the victim to accompany him approximately two blocks, and shot him with a shotgun while he was pleading for his life. This evidence shows an unusual depravity and total disregard for human life.
This Court, in Beck v. Alabama, 396 So.2d 645 (Ala. 1981), spelled out the rule in this State for appellate review of death sentences, as follows:
 "The United States Supreme Court, in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), expressed its approval of Georgia's appellate review process in capital punishment cases. The Georgia procedures require that the appellate court (the State Supreme Court in Georgia) review every death sentence to determine (1) whether it was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether the evidence supports the findings of a statutory aggravating circumstance; and (3) whether the sentence as imposed is excessive or disproportionate in relation to the penalty imposed in similar cases, considering both the crime and the defendant.
 "The procedure we adopt requires that the reviewing court examine cases in which the death penalty is imposed and ascertain that the death penalty is imposed with some uniformity and that its imposition is not substantially out of line with sentences imposed for other acts. In other words, the reviewing court should not affirm a death sentence unless the death penalty is being imposed generally in similar cases throughout the state.
 "In Alabama, a sentence of death is automatically reviewed by the Court of Criminal Appeals and, if affirmed, is then automatically reviewed on petition for certiorari by this Court. Rule 39(k), Alabama Rules of Appellate Procedure, provides:
 " 'In all cases in which the death penalty has been imposed, upon review of the opinion of the court of criminal appeals on certiorari, the supreme court may notice any plain error or defect in the proceeding under review, whether or not brought to the attention of the trial court, and take appropriate appellate action by reason thereof, whenever such error has or probably has adversely affected the substantial rights of the petitioner.'
 "This procedure adds one step of review to the Georgia procedure and, therefore, adds one more safeguard to insure that the death sentence is not being imposed arbitrarily or capriciously. Furthermore, ARAP Rule 39(k) provides a 'plain error' scope of review applicable to death penalty cases only.
 "To insure that sentences of death will not be arbitrarily and capriciously imposed, we hold that both the Court of Criminal Appeals and this Court should examine all death sentences in light of the standards and procedure approved in Gregg. Each death sentence should be reviewed to ascertain whether the crime was in fact one properly punishable by death, whether similar crimes throughout the state are being punished capitally and whether the sentence of death is appropriate in relation to the particular defendant. In making this final determination, the courts should examine the penalty imposed upon the defendant in relation to that imposed upon his accomplices, if any."
This standard of appellate review, I believe, is consistent with the standard of review approved by the Supreme Court of the United States.[1]
I believe that the Court of Criminal Appeals and this Court are seriously considering their roles as appellate courts and are *Page 635 
conscientiously applying the Beck standards on review, and are not automatically affirming the determinations made by trial judges of the appropriateness of death sentences, and are especially sensitive to their roles when there is a jury override, as is the case here. Cf. Ex parte Hays, 518 So.2d 768
(Ala. 1986), a case that arose out of the same circuit as this one and in which there was a jury override.
Applying the standards set out in Beck to the facts of this case, I am persuaded that the trial judge, in this case, was justified in reaching the conclusion that jury override was appropriate. In reaching this conclusion, I have compared the facts of this case with those of other cases involving intentional murder during the course of a robbery, and in which the death penalty has been sustained. Cf. Evans v. State,361 So.2d 666 (Ala. 1978), and Ritter v. State, 429 So.2d 928 (Ala. 1983). Admittedly, in those cases the jury recommended death, but that fact merely points out why I have difficulty, as apparently the trial judge did, understanding why eight of the twelve jurors in this case thought life without parole was an appropriate sentence.
[1] In Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154,82 L.Ed.2d 340 (1984), the Court stated:
 "Petitioner's final challenge is to the application of the standard the Florida Supreme Court has announced for allowing a trial court to override a jury's recommendation of life. See Tedder v. State, 322 So.2d 908, 910 (1975). This Court already has recognized the significant safeguard the Tedder
standard affords a capital defendant in Florida. See Dobbert v. Florida, 432 U.S. 282, 294-295, 97 S.Ct. 2290, 2298-2299, 53 L.Ed.2d 344 (1977). See also Proffitt [v. Florida], 428 U.S. [242] at 249, 96 S.Ct. [2960] at 2965 [49 L.Ed.2d 913
(1976)] (joint opinion). We are satisfied that the Florida Supreme Court takes that standard seriously and has not hesitated to reverse a trial court if it derogates the jury's role. See Richardson v. State, 437 So.2d 1091, 1095 (Fla. 1983); Miller v. State, 332 So.2d 65 (Fla. 1976). Our responsibility, however, is not to second-guess the deference accorded the jury's recommendation in a particular case, but to ensure that the result of the process is not arbitrary or discriminatory.
 "We see nothing that suggests that the application of the jury-override procedure has resulted in arbitrary or discriminatory application of the death penalty, either in general or in this particular case. Regardless of the jury's recommendation, the trial judge is required to conduct an independent review of the evidence and to make his own findings regarding 'aggravating and mitigating circumstances.' If the judge imposes a sentence of death, he must set forth in writing the findings on which the sentence is based. Fla.Stat. § 921.141(3) (1983). The Florida Supreme Court must review every capital sentence to ensure that the penalty has not been imposed arbitrarily or capriciously § 921.141(4). As Justice STEVENS noted in Barclay [v. Florida, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983)] there is no evidence that the Florida Supreme Court has failed in its responsibility to perform meaningful appellate review of each death sentence, either in cases in which both the jury and the trial court have concluded that death is the appropriate penalty or in cases when the jury has recommended life and the trial court has overridden the jury's recommendation and sentenced the defendant to death. See Barclay v. Florida, 463 U.S., at 971-972, and n. 23, 103 S.Ct., at 3436, and n. 23 (opinion concurring in judgment.)"
I believe that in Beck v. Alabama, 396 So.2d 645 (Ala. 1981), this Court "built into the judicial machinery checks against the freakish imposition of the death penalty." (Adams, J., concurring specially, 396 So.2d, at 666).