714 So.2d 1132 (1998)
James COOK, Appellant,
v.
STATE of Florida, Appellee.
No. 97-1583.
District Court of Appeal of Florida, First District.
July 15, 1998.
Rehearing Denied August 13, 1998.
Nancy A. Daniels, Public Defender, and Carl S. McGinnes, Assistant Public Defender, Tallahassee, for Appellant.
Robert Butterworth, Attorney General, and Carolyn J. Mosley, Assistant Attorney General, Tallahassee, for Appellee.
KAHN, Judge.
Appellant, James Cook, appeals his conviction and sentence for robbery with a deadly weapon. He contends he is entitled to a new trial because the prosecutor elicited improper comments on the right to remain silent. We agree and reverse.
The evidence at trial revealed that at about 12:27 p.m. on December 19, 1996, a black man went into a Jacksonville Lil' Champs store, displayed a knife to the manager, and said "this is a robbery." Confronted with the knife, the manager stepped back, and the robber hit the "no sale" key on the cash register and removed dollar bills, food stamps and change from it. The robber then jumped the counter and left the store on foot. The manager testified that the robber wore a black stocking cap with a logo on the front, a light black and yellow silk jacket, blue jogging pants with snaps on the leg and a green *1133 sun visor around his neck. She later identified appellant as the robber in court and after a police show-up of appellant on the day of the robbery.
Officer Lloyd Meyers of the Jacksonville Sheriff's Office testified at trial that after receiving the robbery call, it took him four or five minutes to get to the Lil' Champ area. He saw appellant about ten minutes after the robbery walking towards the expressway. Appellant was wearing a black, gold and yellow jacket worn inside out, a pair of garnet and gold shorts and a sun visor. He had a bulge under his jacket. Appellant glanced at Officer Meyers a couple of times and began to walk quickly. Meyers stopped appellant, had him put his hands on the police car, and frisked him. During the search, Meyers found a pair of blue warm up pants with snaps, a black knit cap, some dollar bills, food stamps and some change. After Officer Meyers testified that he advised appellant of his constitutional rights, the following colloquy occurred:
Q. (By Assistant State Attorney Pajcic): Sir, after he had talked to youresponded to your questions and acknowledged his Miranda rights, did he everwhat was his demeanor?

A: (By Officer Meyers): Other than being nervous, he was compliant, did as he wasas I instructed him to do about getting in the car. He sat back in the seat and said nothing.

Q. Did he ever get angry?
A. No, he didn't.
Q. Did he ever protest?

A. No, he didn't.

(Emphasis supplied).
Defense counsel promptly objected and moved for a mistrial, arguing a violation of Cook's constitutional right to remain silent. The court denied the motion for mistrial, but acknowledged that the comments were improper and offered to give a curative instruction. Defense counsel declined the offer of an instruction explaining that it would just "make it worse."
The trial court correctly characterized the exchange as "improper comment on post-arrest silence;" however, the court erred in denying appellant's motion for mistrial. "Any comment which is fairly susceptible of being interpreted as a comment on silence will be treated as such." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986); Carr v. State, 561 So.2d 617 (Fla. 5th DA 1990). Our supreme court in Clark v. State, 363 So.2d 331 (Fla.1978) held that evidence of post-arrest silence is improper because it violates the defendant's right against self incrimination. In State v. DiGuilio, the supreme court receded from Clark, to the extent Clark held the error can never be harmless. 491 So.2d at 1137 n. 14. Only if the State can prove beyond a reasonable doubt that the improper comment had no effect on the jury verdict, can the error be deemed harmless. Id. at 1138. Here, the State has not met that burden.
The prosecutor's questions concerning "demeanor" and "protest" carried the State's case to a potentially fatal precipice. Officer Meyers' responses, directly elicited by the inartful questions, knocked away the supporting ledge. The possibility that the improper comments affected the verdict was amplified because the only question before the jury was identity. Although the victim identified appellant as the robber shortly after the robbery and once in court, both times appellant was the only one there for the victim to pick out. Additionally, the victim testified that the robbery happened very quickly, and she could not remember the robber's height, eyes, or other facial features. She also did not recall whether his complexion was dark or light, or whether he had facial hair or scars. She indicated that his age was somewhere between 19-30 years old. Moreover, the jury apparently struggled with the question of identity. The jurors deliberated for four hours and asked to see or hear the entire testimony of the manager during deliberation.
Accordingly, we REVERSE and REMAND for a new trial.
BARFIELD, C.J., and JOANOS, J., concur.