985 So.2d 500 (2008)
James Franklin ROSE, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-473.
Supreme Court of Florida.
March 13, 2008.
Rehearing Denied June 26, 2008.
*501 Steven J. Hammer of the Law office of Steven J. Hammer, P.A., Fort Lauderdale, FL, for Appellant.
Bill McCollum, Attorney General, and Carolyn M. Snurkowski, Assistant Attorney General, Tallahassee, Florida, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
James Franklin Rose appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm the trial court's decision denying relief.

FACTS
We set out the underlying facts supporting Rose's convictions in Rose v. State (Rose I), 425 So.2d 521, 522-23 (Fla.1982). The procedural history in this case is set forth in Rose v. State (Rose II), 787 So.2d 786 (Fla.2001):
James Franklin Rose was indicted for the kidnapping and first-degree murder of eight-year-old Lisa Berry in November 1976. Rose's first trial resulted in a mistrial because the jury could not reach a verdict. On retrial, he was convicted of both counts and sentenced to life on the kidnapping count and death on the murder count. This Court affirmed both of his convictions but vacated the death sentence. See Rose v. State, 425 So.2d 521 (Fla.1982). The Court found the trial court erred during the penalty phase in giving an improper "dynamite" or "Allen charge" after the jury sent the following note to the judge: "We are tied six to six, and no one will change their mind at the moment. Please instruct us." We held that the trial court erred in failing to recognize that where seven jurors fail to vote to recommend *502 death, the jury recommendation is for life. The case was remanded for a resentencing. See id. at 525.
At resentencing the new jury recommended a death sentence by a vote of eleven to one, and the trial court sentenced Rose to death. This Court affirmed the sentence. See Rose v. State, 461 So.2d 84 (Fla.1984). Following the Governor's subsequent issuance of a death warrant, Rose petitioned this Court for a writ of habeas corpus and a motion to stay his execution, asserting, among others, claims of ineffective assistance of appellate counsel. This Court denied relief. See Rose v. Dugger, 508 So.2d 321 (Fla.1987). Thereafter, Rose filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, alleging ineffective assistance of counsel at both the guilt and penalty phases of his trial. The trial court summarily denied the motion without conducting an evidentiary hearing but this Court reversed, and directed the trial court to hold an evidentiary hearing. See Rose v. State, 601 So.2d 1181 (Fla.1992).
After holding an evidentiary hearing, the trial court again denied all relief. Thereafter, this Court affirmed the trial court's denial of the claim of ineffective assistance of counsel at the guilt phase. See Rose v. State, 675 So.2d 567 (Fla. 1996); however, we reversed the trial court's ruling with regard to the penalty phase ineffectiveness of counsel and remanded for a new sentencing. See id. at 569. Pursuant to this Court's reversal, a new jury was selected and penalty phase proceedings were held. At the close of this latest penalty phase, the jury recommended death by a vote of nine to three.... On February 13, 1998, the trial court sentenced Rose to death.
Id. at 789-90 (footnotes omitted). The trial court properly found four statutory aggravators: (1) Rose was on parole; (2) Rose had prior violent felony convictions; (3) the murder was committed during a kidnapping; and (4) the murder was heinous, atrocious, or cruel (HAC). Id. at 804. No statutory mitigators were found. Id. The court gave "some weight" to the following three nonstatutory mitigators: (a) that the defendant had a non-nurturing childhood, (b) good employment history, and (c) good characteristics. "Little weight" was given to the following three nonstatutory mitigators: (i) that defendant had below average intelligence, (ii) was a good person adapted to prison life, and (iii) had performed good deeds. Id. Finally, "very little weight" was given to Rose's cooperation and maintaining his innocence. Rose appealed his death sentence to this Court raising seventeen issues for review. Id. at 790 n. 3.[1] However, we rejected *503 Rose's claims and affirmed the judgment and imposition of the death sentence. Id. at 806.
Thereafter, in a timely postconviction motion filed in the trial court, Rose alleged eight grounds for relief: (1) defense counsel's failure to obtain a ruling on a Richardson[2] inquiry denied Rose effective assistance of counsel; (2) defense counsel was ineffective for failing to correct a member of the venire, who stated, "Well, is the case going to be explained to us? I mean, why he was sentenced?;" (3) defense counsel was ineffective for failing to object to the State's comment in opening statement that Rose had invoked his right to remain silent once police questioning became more accusatory; (4) defense counsel was ineffective for failing to object to the State's comment in closing argument that Rose's time-line defense was a "smokescreen"; (5) Rose's death sentence is unconstitutional because a judge, instead of a jury, determined the aggravating circumstances and imposed death in violation of the United States Constitution; (6) death is not a permissible punishment because the State failed to properly charge Rose with a death-eligible offense; (7) the court should enter a sentence of life imprisonment because a death sentence is unconstitutional; and (8) defense counsel failed to investigate DNA evidence and was ineffective during the penalty phase for failing to seek DNA testing.[3] After holding a hearing in accordance with Huff v. State, 622 So.2d 982 (Fla.1993), the trial court summarily denied all relief. This appeal follows.

RULE 3.851
Initially, Rose argues that the trial court failed to properly attach any record or transcript from the resentencing court other than the original indictment and the sentencing order. He argues that rule 3.850(d) requires the court to attach "a copy of that portion of the files and records that conclusively shows that the movant is entitled to no relief." Fla. R.Crim. P. 3.850(d).
First, we note that rule 3.851, the postconviction rule for capital cases, not rule 3.850, applies to Rose since his postconviction motion was filed after October 1, 2001, the effective date of the rule. See Fla. R.Crim. P. 3.851(a). Nevertheless, this Court has continued to follow the same general postconviction rule under rule 3.851, which we stated in Nixon v. State, 932 So.2d 1009, 1018 (Fla.2006), "In order to support summary denial, the trial court must either state its rationale in the order denying relief or attach portions of the record that would refute the claims." We find that in denying Rose's motion for postconviction relief, the trial court complied with this rule by either stating its rationale or referencing the State's reasoning and record citations. Thus, we conclude the trial court sufficiently complied with rule 3.851 in disclosing the basis for denial of relief to provide for meaningful appellate review. See Nixon, 932 So.2d at *504 1018. The factual and legal correctness of the trial court's rulings will be considered under the individual issues raised on appeal.

INEFFECTIVE ASSISTANCE OF COUNSEL
Rose raises four issues based upon the denial of his claims of ineffective assistance of trial counsel. First, Rose argues that trial counsel's neglect to obtain a ruling on a Richardson inquiry actually prevented the defense from using autopsy photographs that demonstrated that an alleged skull fracture of the victim may have resulted from the work of maggots rather than the impact of a hammer during the fatal attack. Rose argues that utilization of the photographs by the defense would have negated the HAC aggravator. The State argues that Rose is procedurally barred from raising this issue because this Court discussed and resolved it on direct appeal. Rose II, 787 So.2d at 795-98. The State further argues that even if Rose is not procedurally barred, an evidentiary hearing was not necessary because defense counsel put his discussion and reason for not presenting the photographs on the record at trial, and that discussion demonstrates counsel was not deficient and that Rose was not prejudiced.
During Rose's latest penalty phase, a Richardson hearing ensued after a controversy arose as to the late discovery and production by the State of two autopsy photographs. Rose's attorney did not obtain a ruling from the trial court, and the trial court did not issue one. On direct appeal, Rose argued that the trial court erred in failing to rule on the Richardson objection. We held:
As a general rule, the failure of a party to get a timely ruling by a trial court constitutes a waiver of the matter for appellate purposes. See Richardson v. State, 437 So.2d 1091, 1094 (Fla.1983). As just mentioned above, the trial court held a hearing regarding the late discovery of the two sets of photographs. Although it could not be determined whether the State willfully committed improprieties regarding the late discovery of the photographs, Rose's counsel realized that the use of these photographs would have at best had the effect of a double-edged sword because of their gruesome nature. In a tactical move, Rose's counsel decided not to use the photographs and not to call his own expert despite the trial court's urging. Trial counsel's decision effectively resolved the matter and any failure of the court to formally rule was rendered harmless. See Richardson, 437 So.2d at 1094.
Rose II, 787 So.2d at 797. Despite our ruling, Rose now claims his lawyer was deficient in not utilizing the photographs to his advantage.
This Court has held that "[c]laims previously raised on direct appeal will not be heard on a motion for post-conviction relief simply because those claims are raised under the guise of ineffective assistance of counsel." Sireci v. State, 469 So.2d 119, 120 (Fla.1985). However, the rule prohibiting the actual relitigation of issues is not so expansive that it procedurally bars a claim of ineffective assistance of counsel in a postconviction motion where counsel's failure to act, or not act, is precisely the deficiency that may have prevented a proper review of the issue on direct appeal. In Knight v. State, 710 So.2d 648 (Fla. 2d DCA 1998), the Second District considered whether a claim of ineffective assistance was procedurally barred, and explained:
[T]hese principles do not apply to a claim where a specific accusation is aimed at trial counselbe it the failure *505 to move to suppress evidence, the failure to object to the admission of evidence, or, as here, silence in the face of an objectionable comment by the prosecutorwhich has not, and could not have, been raised on plenary appeal. There is a critical distinction between an attack on counsel for failing to object to, and thus preserve review of, a prosecutor's remark and the reviewability by an appellate court of the comment itself to determine whether reversal is warranted.
We observe a troubling tendency by trial courts ... to deny procedurally legitimate attacks on trial counsel by relying on the prisoner's failure to raise the underlying, substantive issue on direct appeal when the prisoner has claimed he was prohibited from doing so only because of the very deficiency of counsel in failing to pose the appropriate legal objection.
Id. at 649; see also Jackson v. State, 711 So.2d 1371, 1372 (Fla. 4th DCA 1998) (holding that while any error in a prosecutor's comments were not preserved for direct appeal because of counsel's failure to object, such failure may be sufficient to constitute a claim of ineffective assistance of counsel in a postconviction motion).
In this instance, we find no procedural bar but nevertheless find no error in the trial court's summary denial of this claim. Because a trial court's decision whether to grant an evidentiary hearing on a rule 3.851 motion is ultimately based on the legal sufficiency of the claims asserted or the adequacy of the existing record to resolve the claims, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003) (holding that "pure questions of law" that are discernible from the record "are subject to de novo review"). Accordingly, when reviewing a court's summary denial of an initial rule 3.851 motion, an appellate court must accept the movant's factual allegations as true, and the appellate court will affirm the ruling only if the filings show that the movant has failed to state a facially sufficient claim or the existing record demonstrates that there is no issue of material fact to be determined. See Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000).
In the case at bar, Rose argues that an evidentiary hearing is required to determine whether counsel's failure to obtain a ruling on the Richardson hearing was a matter of reasonable trial strategy or of simple neglect. However, we conclude that an evidentiary hearing was not necessary because Rose's defense counsel laid out his rationale on the record. On appeal, we considered the issue of whether the trial court erred in failing to rule on the Richardson hearing and found such issue was waived for appellate purposes. See Rose II, 787 So.2d at 797. Nevertheless, in an abundance of caution, we discussed the merits of Rose's claim and found that even if counsel had preserved the issue for review, the court's failure to formally rule was harmless. Id.
The crux of the controversy in the Richardson hearing was the late discovery of two photographs, which purportedly depict one of the injuries suffered by the victim. During the Richardson hearing, defense counsel was unsure as to whether the defense medical expert, Dr. Wright, had reviewed or needed to review the photographs, which Rose now contends would have demonstrated a quicker death for the victim and negated the HAC aggravator. The record shows that defense counsel considered introducing the photographs, but decided against it, stating, "I have talked it over with Mr. Rose, and just based on the chance that some of these additional photographs may come in, I am *506 not calling Dr. Wright." The record reflects that the trial court offered to allow trial counsel as much time as necessary to go over the two photographs with Dr. Wright on manner and cause of death, but counsel declined, explaining, "It's just my opinion that that's ultimately going to open the door. I just can't take the chance of those pictures coming in." In context, the same record reflects that Rose's counsel realized the double-edged effect of the admission of these photographs and others because of their gruesome nature. It is apparent that Rose's counsel considered the alternatives and made a tactical move when he decided not to use the photographs and not to call his own expert to discuss them. Such strategic decisions do not constitute ineffective assistance of counsel. Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000). Thus, we conclude that the record adequately and conclusively refutes Rose's claim that his counsel was deficient.
Rose has also failed to set out a prima facie claim of prejudice. Rose contends that these photographs would have established a quicker death of the victim and therefore negated the HAC aggravator. As we stated in Rose II, "Even assuming that the skull fracture resulted from the maggots eating out the particular part of the victim's skull and not from a direct impact to the head, it is hard to see how that establishes a quicker death for the victim." 787 So.2d at 796; cf. Way v. State, 760 So.2d 903, 915 (Fla.2000) (affirming denial of postconviction relief where photographic evidence did not put the case in such different light as to undermine confidence in proceeding).
In Rose's second claim of trial court error in the denial of his claims of ineffective assistance of counsel, Rose argues that the trial court erred in summarily denying his claim that counsel was ineffective for failing to correct juror DeMatteis, during voir dire, when she stated, "Well, is the case going to be explained to us? I mean, why he was sentenced?" He argues that counsel was ineffective for failing to correct juror DeMatteis. He further argues that he was prejudiced by the comment because the jurors assumed, as a result of the comment, that death had already been recommended. We find this claim facially and legally insufficient and refuted by the record.
On the face of it we conclude juror DeMatteis was simply asking whether the facts of the case would be explained before the jury deliberated on Rose's sentence. The record does not reflect that she or any other juror had any prior knowledge of Rose's previous sentence. In other words, her question was not a statement of fact that would not otherwise be presented to the jury. See, e.g., Pender v. State, 530 So.2d 391, 393 (Fla. 1st DCA 1988) (finding reversible error based on mentioning the existence of another pending criminal case); Wilding v. State, 427 So.2d 1069, 1069 (Fla. 2d DCA 1983) (same). Nor was her question an expression of a tainted opinion, which by itself would not be sufficient to taint the remainder of the panel. Johnson v. State, 903 So.2d 888, 897 (Fla. 2005). Further, Rose does not direct our attention to a specific portion of the record wherein any improper prejudicial assumption by the other jurors can be substantiated.
Assuming, however, that counsel's failure to correct juror DeMatteis was somehow deficient, Rose has not further alleged how that deficiency negatively impacted the jury or otherwise undermined the outcome of the trial. At no point did the trial judge or anyone else inform the jury that Rose was previously sentenced to death. See Hitchcock v. State, 673 So.2d 859, 863 (Fla.1996). Furthermore, the record *507 reflects the trial judge's instructions and responses to venire members' questions were all consistent with the standard instructions for capital cases. See Jones v. State, 845 So.2d 55, 67 (Fla.2003); Kearse v. State, 770 So.2d 1119, 1130 (Fla.2000).
In Rose's third claim of ineffective assistance of counsel, Rose argues that the trial court erred in summarily denying his claim that counsel was ineffective for failing to object when, during opening argument in the most recent penalty phase, the State allegedly commented on Rose's right to remain silent. During opening argument, the prosecutor said, "And [detective] Van Sant said words to the effect, `Look, are you making up this story regarding Lisa with a man at the bowling alley that you saw?' And at that time, Jim Rose terminated the conversation, wouldn't speak to him anymore." The trial court held that the comment was directed at the defendant's guilt, which had previously been determined, and, in any case, would not have affected the outcome of the penalty phase. Our case law supports the trial court's ruling.
A comment on a defendant's silence tends to have the effect of relieving the State of some portion of its burden to prove defendant's guilt beyond a reasonable doubt. See Bertolotti v. State, 476 So.2d 130, 133 (Fla.1985). "If the comment is fairly susceptible of being construed by the jury as a comment on the defendant's exercise of his or her right to remain silent, it violates the defendant's right to silence." State v. Hoggins, 718 So.2d 761, 769 (Fla.1998); see also Dickey v. State, 785 So.2d 617, 619-20 (Fla. 1st DCA 2001); Coney v. State, 756 So.2d 173, 174 (Fla. 4th DCA 2000); Cook v. State, 714 So.2d 1132, 1133 (Fla. 1st DCA 1998). However, a resentencing is not a retrial of the defendant's guilt or innocence. See King v. State, 514 So.2d 354, 357 (Fla. 1987). In Chandler v. State, 534 So.2d 701 (Fla.1988), we explained:
Chandler's original jury convicted him of these murders, and the resentencing jury had to accept those convictions as facts. The state, therefore, may have been correct in arguing to the trial court that the statement was a fair comment on the evidence. At most it was only an inferential comment on Chandler's silence, but, assuming for the sake of his argument that the state commented on Chandler's right to remain silent, we find any such error harmless. Given the fact that Chandler had been convicted of these murders and, therefore, would know how they were committed, we are convinced beyond any reasonable doubt that the prosecutor's statement would not have affected the jury's deliberations and recommendation on the penalty.
Id. at 703-04. As in Chandler, we affirm the trial court's denial of this claim, since even if we assume that the State commented on Rose's right to remain silent, such error would be harmless as an affirmation of Rose's guilt and not as support for aggravation of that guilt.
In Rose's fourth claim of trial court error in the denial of his claims of ineffective assistance of counsel, Rose argues that counsel was ineffective for failing to object during the State's closing argument when the State referred to Rose's time-line defense as a "smokescreen." The trial court summarily denied Rose's claim, finding that Rose is procedurally barred from raising this issue in postconviction litigation because he should have raised it on direct appeal. The trial court also found that Rose had not sufficiently alleged prejudice flowing from the remark.
During closing argument, the State made the following remarks:

*508 Then [Rose] is sitting there with Barbara, he says, you know, who is that guy with Lisa walking by there with the goatee? I submit to you Lisa was dead. She wasn't in that bowling alley.
This smoke screen about the Grawbowskis'[sic] and Autrys, their recollection of time, ladies and gentlemen, look, you got to draw upon your human experience, common sense. When things like this happen, people aren't looking at your watches oh, yes, I need to remember what time it is. But we do know for sure that Mr. Rose called Barbara somewhere between 10:23 and 10:30. He already left the bowling alley, that's consistent with all the other testimony. He arrived about 11:30 when he came back.
So I question that mitigator. And even if you find it to exist, what has it got do with anything regarding mitigation of Mr. Rose's heinous, atrocious, and cruel brutal murder of this little eight year old girl? What does it got to do with it?
(Emphasis added.) On direct appeal, Rose asserted that he was entitled to a new trial because the prosecutor engaged in improper closing argument. Rose II, 787 So.2d at 797. However, the prosecutor's comments raised on direct appeal were not the same comments raised in the present postconviction motion.[4] It is plain from the record that the "smokescreen" comment was not raised on direct appeal. Further, the record reflects that defense counsel neither objected nor moved for a mistrial as to these comments.
Nevertheless, in addressing the merits of Rose's claim, we affirm the trial court's ultimate decision to deny relief because the record provides context and affirmatively refutes Rose's characterization of the comment and demonstrates a lack of prejudice. The proper method in reviewing the effect, and therefore the prejudice, of the prosecutor's comment in Rose's case is to place the comment in context. See Ham v. State, 580 So.2d 868, 868 (Fla. 3d DCA 1991); compare Walls v. State, 926 So.2d 1156, 1167 (Fla.2006) (holding that even if counsel's performance was deficient, defendant failed to establish prejudice from one comment), and Holland v. State, 916 So.2d 750, 758-59 (Fla.2005) (holding that defendant failed to show prejudice in the face of ten prosecutorial comments because even if defense counsel had objected and the objection had been sustained, there was no reasonable probability that the trial court would have declared a mistrial), with Brooks v. State, 762 So.2d 879, 899-905 (Fla.2000) (finding that a new penalty phase proceeding before a new jury was required based on the prosecutor's closing argument that included numerous improper comments previously condemned by this Court), and Waters v. State, 486 So.2d 614, 616 (Fla. 5th DCA 1986) (holding that prosecutor's repeated characterizations of defense counsel's closing arguments as misleading and a smokescreen was not harmless).
*509 We conclude that, when placed in context, the failure to object to the prosecutor's isolated "smokescreen" comment in Rose's case does not constitute a sufficient claim of ineffectiveness. Unlike Brooks and Waters, the prosecutor's "smokescreen" comment was mentioned only once, and Rose has been unable to establish how this comment would have prejudiced a case where four statutory aggravators were found by the trial court. Therefore, we conclude that the trial court did not have to conduct an evidentiary hearing in order to examine this remark in context and determine the lack of prejudice.

CONSTITUTIONAL CHALLENGES
In Issues V-VII, Rose challenges the constitutionality of Florida's death penalty. Rose's entire argument excerpted in full reads:
Claims V, VI and VII challenge the constitutionality of Rose's death penalty based on a lack of any requirement that a jury determine aggravating circumstances and a lack of any requirement that the facts constituting aggravating circumstances be charged in the indictment, resulting in a necessity that Rose be sentenced to life imprisonment. (R 134-147). Rose incorporates his arguments below in this regard based on his federal rights under the Sixth, Eighth and Fourteenth Amendments.
Rose has merely stated a conclusion and referred to arguments made below. Thus, we consider the issue waived for appellate review. Duest v. Dugger, 555 So.2d 849, 852 (Fla.1990) ("The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived."); see also Simmons v. State, 934 So.2d 1100, 1111 n. 12 (Fla. 2006); Cooper v. State, 856 So.2d 969, 977 n. 7 (Fla.2003); Randolph v. State, 853 So.2d 1051, 1063 n. 12 (Fla.2003).
In Issue V, Rose argued at the postconviction hearing that the death sentence is unconstitutional because a judge, instead of a jury, determined the aggravating circumstances and imposed death in violation of the United States Constitution. However, we have held that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), would not apply retroactively in postconviction proceedings. Johnson v. State, 904 So.2d 400, 412 (Fla.2005).
In Issue VI, Rose argued at the postconviction hearing that death is not a permissible punishment since Ring mandates that the State properly charge Rose with aggravating circumstances in the indictment. Because we have already held that Ring does not apply retroactively in postconviction proceedings this claim is barred. See Johnson, 904 So.2d at 412.
Finally, in Issue VII, Rose argued at the postconviction hearing that because the court may not constitutionally impose a sentence of death under Ring, it should enter a sentence of life imprisonment. Issue VII is merely an assertion of a legal conclusion that Rose would have us reach when addressing the merits of Issues V-VI. Thus, Issue VII fails to raise a substantive challenge and is denied for the same reasons as we have denied Issues V-VI.
Accordingly, we affirm the trial court's denial of postconviction relief.
It is so ordered.
LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] Those issues were: (1) the trial court erred in allowing the State to present gruesome photographic evidence; (2) the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in its late release of autopsy photographs; (3) the trial court erred in failing to rule following a hearing held pursuant to Richardson v. State, 246 So.2d 771 (Fla. 1971), concerning the late discovery of the Brady material; (4) prosecutorial comments made during closing arguments were harmful to Rose; (5) the State engaged in misconduct in its cross-examination of the defense's expert; (6) the trial court erred in allowing the State to elicit testimony designed to imply that a sexual assault had been committed; (7) the trial court erred in allowing the State to present evidence of the impermissible age aggravator; (8) the trial court erred in (a) its consideration and finding of the "prior violent felony" aggravator and (b) impermissibly doubling this aggravator with the "parole" aggravator; (9) the trial court erred in finding the kidnapping aggravator; (10) the trial court erred in finding HAC; (11) the trial court erred in its consideration of mental mitigation; (12) victim impact testimony was improperly allowed; (13) the trial court erred by refusing to read nonstatutory mitigators; (14) the sentence is not proportional; (15) the time spent on death row violates Rose's constitutional rights; (16) death by electrocution violates the state and federal constitutions; and (17) Rose deserves a life sentence on the ground of the penalty phase "Allen charge" issue from his original trial. Rose II, 787 So.2d at 790 n. 3.
[2] Richardson v. State, 246 So.2d 771, 775 (Fla. 1971) (holding that where the State seeks to introduce evidence in violation of the rules of discovery, the trial judge should inquire whether the violation was inadvertent or willful, whether it was trivial or substantial, and what effect the violation had on the ability of the defendant to prepare for trial).
[3] Rose has not raised the DNA issue in this appeal, and we consider it waived.
[4] On direct appeal, we held that the claim was procedurally barred for failure to move for a mistrial after the trial court sustained defense counsel's objection. Rose II, 787 So.2d at 797. Again, in an abundance of caution, we discussed the merits and found that the prosecutor's comments were nevertheless harmless and not sufficiently egregious or fundamental to warrant reversal. Id. The comments at issue on direct appeal were:

[Prosecutor:] So you know who the last person to see Lisa alive was, as shown by the evidence? James Franklin Rose. And he takes this little eight-year-old girl in his van to somewhere. And don't you know, drawing on your own human experience and common sense, she probably wanted to know where are we going? My mother's at the bowling alley.
Id.